IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
-------------------------------------------------------------X
HARRY DUNN ET AL.,

        Plaintiffs,

            -against-

SCOTT BESSENT, ET AL.,

        Defendants.
-------------------------------------------------------------X

Case 1:26-cv-01719-RJL

**[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING**

## INTEREST OF AMICUS CURIAE

Amicus curiae Jason Goodman is a journalist, video producer, and pro se litigant who has publicly reported on, and personally litigated issues involving, alleged government-linked censorship, platform coordination, retaliatory legal activity, abusive litigation tactics, and legal weaponization commonly described as "lawfare."

Amicus did not participate in the January 6 activities that supply the foundation of Plaintiffs' Complaint. That fact is central to his interest. Plaintiffs do not seek relief limited to January 6 related payments, specific criminal defendants, identified debts, or claimants adjudicated to have incurred obligations in aid of insurrection or rebellion. Plaintiffs ask this Court to enjoin payments from the newly formed Anti-Weaponization Fund "to any claimant." Compl. Prayer for Relief ¶ E. That requested relief would reach far beyond Plaintiffs' January 6 narrative and would impair the interests of absent nonparties whose alleged lawfare injuries have no connection to January 6, violence, paramilitary activity, or any legally adjudicated insurrection or rebellion.

Amicus is a potential member of that non-January 6 class. Based on his journalism, litigation history, and public reporting concerning alleged government-linked censorship and lawfare, amicus may be among the persons whose legitimate claims the Fund was designed to consider. Whether any such claim would ultimately be accepted is not before this Court and need not be

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

RECEIVED
MAY 21 2026
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

1

decided here. The relevant point is that Plaintiffs seek a broad injunction that would extinguish or freeze the opportunity for absent citizens like amicus to seek relief before any claim is filed, any claimant is identified, any payment is approved, or any individualized adjudication occurs.

Amicus therefore has a concrete, particularized, and legally distinct interest in this case: preserving the ability of non-January 6 claimants to pursue lawful relief without having their claims preemptively destroyed by a lawsuit brought by persons who do not represent them, were not injured by them, and have no Article III standing to litigate on their behalf.

Amicus also has a civic interest in protecting the federal courts from being used as instruments of the very lawfare the Fund exists to address. The requested injunction would chill the Petition Clause rights and remedial interests of citizens who may seek redress for government-linked legal weaponization, including lawfare facilitated through tax-exempt or public-interest litigation entities operating under the appearance of neutrality. That broader public consequence is not adequately represented by the parties. Plaintiffs seek universal relief. Defendants are federal officials defending the challenged settlement and Fund. No party speaks for absent nonparty claimants whose interests may be impaired by Plaintiffs' overbroad request.

Amicus submits this brief to explain why Plaintiffs lack standing to extinguish unrelated claims belonging to absent citizens; why political labels cannot substitute for adjudicated constitutional predicates; why any Section 4 issue, if it ever arises, must be claimant-specific, payment-specific, debt-specific, and ripe; and why any relief, if entered at all, must be limited to concrete, identified payments actually adjudicated unlawful.

## SOURCE OF AUTHORITY TO FILE

This brief is submitted conditionally with a motion for leave to file under Local Civil Rule 7(o). Under LCvR 7(o)(1), an amicus curiae other than the United States, a federal officer or

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

agency, or a state may file an amicus brief only upon leave of Court, either after submission of a motion for leave or upon the Court's own initiative.

Amicus does not seek to intervene as a party and does not seek party status. Amicus seeks only leave to submit the accompanying brief to assist the Court in evaluating Article III standing, ripeness, the absence of any legally operative Section 4 predicate, the overbreadth of Plaintiffs' requested universal relief, and the interests of absent nonparty lawfare claimants whose claims may be impaired by the relief Plaintiffs seek.

Amicus supports dismissal of the Complaint for lack of Article III standing. Only in the alternative, if the Court reaches the merits or considers interim relief, amicus urges that any relief be limited to identified payments actually found unlawful after individualized adjudication and not extended to unrelated lawfare or weaponization claims belonging to absent nonparties.

## DISCLOSURE STATEMENT

No party's counsel authored this brief in whole or in part. No party, party's counsel, or other person contributed money intended to fund the preparation or submission of this brief. Amicus Jason Goodman is a natural person, has no parent corporation, subsidiary, affiliate, or publicly held corporation owning any interest in him. Amicus files this brief pro se and on his own behalf.

## I.    INTRODUCTION

First, Plaintiffs' Complaint begins with the inflammatory conclusion that this case involves "the most brazen act of presidential corruption this century." That is not an adjudicated fact that this Court must accept. It is a hyperbolic political slogan and an attempt to substitute outrage for pleading. The same defect appears in Plaintiffs' use of "slush fund," "insurrectionists," and "paramilitary groups" throughout the Complaint. Those labels do not establish standing, illegality, Section 4 applicability, or entitlement to universal injunctive relief.

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

3

Second, Plaintiffs' case lacks the indispensable legal predicate for the constitutional theory they invoke. Section 4 of the Fourteenth Amendment concerns debts or obligations incurred in aid of "insurrection or rebellion." Plaintiffs do not identify a conviction or even a charge for rebellion or insurrection under 18 U.S.C. § 2383. They do not identify a judgment finding that any proposed Fund claimant engaged in insurrection. They do not identify a judgment finding that any debt or obligation was incurred in aid of insurrection or rebellion. They rely instead on political and media rhetoric devoid of any necessary legal prerequisite.

Third, Plaintiffs' own posture illustrates why political suspicion, clemency, and public accusation cannot substitute for adjudication. Plaintiffs Dunn and Hodges were among the U.S. Capitol and D.C. Metropolitan police officers who testified before the January 6 Select Committee and were preemptively pardoned by President Biden. President Biden publicly justified those pardons on the ground that even people who have done nothing wrong may suffer irreparable reputational and financial harm from investigation or prosecution.  That is the very premise of the proposed lawfare relief. Plaintiffs cannot embrace this when it protects them while asking this Court to reject it categorically for others with similar claims. Clemency is not adjudication. Accusation is not adjudication. Rhetorical labels are not adjudication.

Fourth, Plaintiffs lack Article III standing because their alleged injury is speculative, not actual or imminent. Their theory depends on a long chain of hypothetical events involving unidentified claimants, future discretionary decisions by Fund administrators, independent conduct by third parties, and future criminal or violent acts that may never occur. The Supreme Court and the D.C. Circuit have rejected such attenuated standing theories repeatedly. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992); *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983);

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013); *Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015); *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024).

Fifth, Plaintiffs cannot convert their generalized grievances into standing. Federal courts do not sit to adjudicate every citizen's claims of allegedly unlawful federal spending. Plaintiffs must show their own concrete and particularized injury, fairly traceable to Defendants, and likely redressable by the requested relief. Here, Plaintiffs' allegations do not satisfy that requirement.

Sixth, Plaintiffs' claims are not ripe. They ask the Court to decide an abstract dispute before any claimant has been identified, before any claim has been brought, before any payment has been approved, before any administrative record exists, and before any debt or obligation has been found to implicate Section 4. Ripeness doctrine prevents courts from entangling themselves in abstract disagreements over policies before their effects are felt in a concrete way. *See Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967); *Texas v. United States*, 523 U.S. 296 (1998); *Devia v. Nuclear Regulatory Commission*, 492 F.3d 421 (D.C. Cir. 2007).

Seventh, Plaintiffs' alleged safety injury is outside the zone of interests of the statutes and constitutional provision they invoke. The Judgment Fund and settlement statutes govern federal payment of judgments and settlements. Section 4 governs public assumption or payment of debts or obligations incurred in aid of insurrection or rebellion. None of those provisions protects Plaintiffs from speculative future violence by independent third parties.

Eighth, Section 4 is debt-specific and obligation-specific. It does not prohibit every payment to every person arbitrarily labeled an "insurrectionist" by plaintiffs. It does not treat attorneys' fees incurred in response to prosecution, restitution imposed as punishment, or custody time as automatically "incurred in aid of insurrection or rebellion." Plaintiffs collapse distinct legal concepts into one conclusory political label.

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

Ninth, Plaintiffs' requested injunction is overbroad. They seek to bar payments "to any claimant," including nonparties with prospective lawfare claims wholly unrelated to January 6. A plaintiff must establish standing for each claim and each form of relief. Plaintiffs have not established standing to extinguish unrelated future claims of unidentified, absent citizens.

Tenth, if the Court reaches the merits, any relief must be confined to identified payments actually found to be unlawful. The Court should not issue a universal injunction dissolving or freezing a Fund as to every claimant based on speculation about undetermined future claimants.

## II.    ARGUMENT

### 1.   The Complaint opens with inflammatory political accusation, not jurisdictional fact.

The Complaint opens with an inflammatory political verdict Plaintiffs ask the Court to assume. It states: "In the most brazen act of presidential corruption this century, President Donald J. Trump has created a $1.776 billion taxpayer-funded slush fund to finance the insurrectionists and paramilitary groups that commit violence in his name." Compl. ¶ 1.

That claim is not entitled to the presumption of truth. It is rhetorical advocacy masquerading as fact, asking the Court to accept five unadjudicated conclusions at once: that the challenged conduct is "corruption"; that it is the "most brazen" corruption of the century; that the Fund is a "slush fund"; that its beneficiaries are "insurrectionists and paramilitary groups"; and that those groups "commit violence" in the President's name.

Those propositions establish none of the required elements: no Article III standing, no actual payment, no approved claimant, no debt or obligation, no Section 4 adjudication, no § 2383 conviction, no traceability, and no redressability.

Under *Twombly* and *Iqbal*, courts do not credit legal conclusions merely because they are placed in a complaint. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal,*

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

556 U.S. 662, 678 (2009). The first sentence of this Complaint is precisely the kind of pleading courts are not required to accept: a string of conclusions designed to create emotional force before the plaintiffs have established jurisdiction.

Calling a settlement "corruption" does not plead corruption. Calling a fund a "slush fund" does not plead unlawful agency action. Calling unidentified possible claimants "insurrectionists" does not plead a Section 4 predicate. Calling future payments "financing" of violence does not plead causation. The Court should disregard the rhetoric and ask the questions Article III and Section 4 require: What concrete injury has occurred? What payment has been approved? Who is the claimant? What debt or obligation is being paid? What legal finding establishes that the debt or obligation was incurred in aid of insurrection or rebellion? How would an injunction redress Plaintiffs' own injury? The complaint fails to address any of these prerequisites.

The first paragraph reads more like a tabloid headline than a federal pleading, but the defect is not merely stylistic. It is a legal problem because the entire Complaint proceeds from the same method. Plaintiffs begin with a political conclusion, then attempt to build standing, Section 4, and universal relief on top of it. Strip away the rhetoric, and the Complaint alleges only this: a Fund may someday pay unidentified future claimants; some future claimants may be connected to January 6; some of them may have threatened Plaintiffs or may do so later; they may use money to do something harmful; and therefore the Court should enjoin all payments to all claimants everywhere.  This is not plausible pleading, it is speculation.

## 2.  Plaintiffs' Section 4 theory lacks the operative insurrection predicate it requires.

The Complaint's constitutional theory depends on one word: "insurrection." Plaintiffs use that word repeatedly and treat it as though it supplies jurisdiction, standing, merits, causation, and remedy. It supplies none of those things.

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

Section 4 of the Fourteenth Amendment does not prohibit payments to persons who have been politically criticized. It does not prohibit payments to persons whom a plaintiff, politician, commentator, newspaper, congressional committee, or podcaster calls "insurrectionists." It prohibits the United States or a State from assuming or paying a "debt or obligation incurred in aid of insurrection or rebellion against the United States." U.S. Const. amend. XIV, § 4.  That text requires a legally operative predicate. Plaintiffs do not plead one.

Plaintiffs do not identify any defendant charged or convicted under 18 U.S.C. § 2383, the federal statute for rebellion or insurrection. They do not identify any Fund claimant adjudicated to have committed insurrection. They do not identify any debt or obligation incurred in aid of insurrection or rebellion or any Fund payment that assumes or pays such a debt or obligation.

Instead, Plaintiffs plead a political conclusion and demand a constitutional remedy. That is backwards. Courts do not start with a political label, presume its legal effect, and then issue nationwide relief before any concrete payment exists.

**A.  Section 4 is not triggered by political rhetoric.**

The word "insurrection" has been used in politics, media, and public debate to describe January 6. But litigation requires more than rhetorical adoption of a popular narrative. If partisan political terminology were enough to trigger Section 4, then constitutional consequences would turn on persistent repetition, not adjudication. That is not law.

Plaintiffs' Complaint illustrates the problem. It repeatedly calls people "insurrectionists" and then treats the label as if it resolves the legal question. But Section 4 does not ask whether a plaintiff can attach a condemnatory term to a group of people. It asks whether the United States is assuming or paying a particular debt or obligation incurred in aid of insurrection or rebellion. The missing predicate is fatal.

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

### B. No criminal insurrection charge or conviction is identified.

Congress has enacted a criminal statute for rebellion or insurrection: 18 U.S.C. § 2383. Plaintiffs do not identify one January 6 defendant charged under that statute. They do not identify one conviction under that statute. They do not identify one proposed Fund claimant whose criminal judgment contains a finding of insurrection.

This matters because Plaintiffs ask the Court to impose Section 4 consequences while bypassing the criminal-law mechanism Congress provided for rebellion or insurrection. Amicus does not contend that Section 4 can never apply absent a conviction under 18 U.S.C. § 2383. But the absence of any such charge or conviction underscores the extraordinary nature of Plaintiffs' request. They ask this Court to treat a legal predicate as established when the Complaint identifies no prosecution, conviction, judgment, or individualized finding establishing it.

### C. There is no civil Section 4 adjudication either.

Nor do Plaintiffs identify a civil judgment establishing the predicate they need. They identify no case adjudicating that any future Fund claimant engaged in insurrection. They identify no case adjudicating that any specific legal fee, restitution award, fine, penalty, damages claim, or custody-related claim was incurred in aid of insurrection or rebellion. They identify no Fund decision applying Section 4 to any claim. They identify no administrative record that this Court could review.  Plaintiffs are therefore asking the Court to decide a Section 4 issue in the abstract, before the relevant facts exist. That is not what federal courts do.

### D. Plaintiffs' theory confuses description with adjudication.

A person may describe an event as a riot, protest, breach, attack, demonstration, mob action, civil disorder, sedition, insurrection, or political violence. Those descriptions may matter in journalism, politics, or public debate. But constitutional litigation requires specific legal findings.

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

The Complaint tries to smuggle a disputed public characterization into court as if it were already an adjudicated fact. That is the central defect of Count III. Plaintiffs do not ask the Court to review a concrete payment against a concrete Section 4 record. They ask the Court to constitutionalize rhetoric.  The Court should reject that move at the threshold.

**E.  Plaintiffs' reported preemptive pardons illustrate why clemency and political suspicion are not adjudication.**

The danger of Plaintiffs' label-based theory is not hypothetical. DOJ's Office of the Pardon Attorney states that President Biden's January 19, 2025 preemptive pardon covered "the police officers from the D.C. Metropolitan Police Department or the U.S. Capitol Police who testified before the Select Committee." Pardon Warrant, Jan. 19, 2025, U.S. Dep't of Justice, Office of the Pardon Attorney. Public reporting identified Plaintiffs Harry Dunn and Daniel Hodges among the officers covered by that pardon. See Jordan Fischer, In surprise final act, Biden pardons Jan. 6 Committee, officers who testified about riot, WUSA9 (Jan. 20, 2025). President Biden publicly justified those pardons on the ground that even people who have done nothing wrong may be irreparably damaged by investigation or prosecution.

That episode underscores the rule-of-law problem in this case. Plaintiffs cannot accept the premise that government may protect people from politically motivated investigation and prosecution when the protection runs to them, while asking this Court to treat claims of lawfare by others as categorically illegitimate before any claim is adjudicated. If political suspicion and clemency are not admissions or adjudications when they protect Plaintiffs, then political rhetoric and clemency cannot be treated as adjudications when Plaintiffs seek to condemn others.

In *Burdick v. United States*, the Supreme Court recognized that a pardon carries an "imputation of guilt" and acceptance a "confession of it." 236 U.S. 79, 94 (1915). At the same

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

time, presidential pardons may be granted before legal proceedings are taken. Ex parte Garland, 71 U.S. (4 Wall.) 333, 380 (1866). Amicus does not ask this Court to adjudicate the validity, meaning, or consequences of Plaintiffs' preemptive pardons. The point is narrower and more fundamental: clemency is not a substitute for adjudication, political suspicion is not a substitute for adjudication, and Plaintiffs' preferred labels are not a substitute for adjudication.

Public controversy concerning late-term preemptive pardons, including public questions about mechanical signature practices and presidential authorization, further illustrates why courts should not treat clemency instruments, political accusation, or public suspicion as substitutes for case-specific legal findings. This Court need not resolve any such controversy here. It need only reject attempts to make rhetoric stand in for adjudication.

### III.    Plaintiffs lack Article III standing because their alleged injury depends on a speculative chain of future actions by independent third parties.

Article III standing requires a concrete, particularized, actual or imminent injury; a causal connection fairly traceable to the challenged conduct; and a likelihood that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. The plaintiff bears the burden of establishing each element. Id.  The Complaint fails all three.

#### A.  The Complaint is a chain of speculation, not a pleading of imminent injury.

Plaintiffs' theory depends on a long sequence of uncertain future events. Each link must occur before Plaintiffs suffer the injury they allege. If any link fails, their theory collapses.

Plaintiffs must assume all of the following: that the Anti-Weaponization Fund will actually receive and retain the disputed money; that a commission will be appointed and begin processing claims; that January 6-related persons will submit claims; that those claims will be accepted rather than denied; that claims will be accepted from persons who actually threaten

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

Plaintiffs; that payments will be large enough to materially change recipients' conduct; that recipients will use the money to facilitate violence rather than to pay ordinary living expenses, legal expenses, debts, medical bills, travel, or other lawful expenses; that any future violence will be directed at Plaintiffs rather than no one, someone else, or some unrelated target; that the future act will be caused by the Fund payment rather than preexisting animus, pardons, public attention, private fundraising, independent ideology, or unrelated criminal intent; that an injunction against the Fund would prevent the future conduct; that an injunction against all claimants is necessary to prevent that conduct; and that no narrower relief could address Plaintiffs' asserted risk. This does not establish imminence. It is conjecture stacked on speculation.

The Supreme Court rejected this kind of theory in *Clapper*, where the alleged injury depended on a "highly attenuated chain of possibilities." 568 U.S. at 410. The D.C. Circuit likewise rejected an attenuated challenge in *Arpaio v. Obama*, where the asserted injury depended on speculation about how independent third parties would respond to challenged government action. 797 F.3d 11. Plaintiffs' theory is equally attenuated. It requires future government action, future applications by unidentified third parties, future approval decisions, future payment amounts, future spending choices, future criminal conduct, and future targeting of Plaintiffs. Article III does not permit jurisdiction on that basis.

### B. Plaintiffs are not the object of the challenged government action.

Standing is especially difficult to establish when the plaintiff is not the object of the challenged government action. *Lujan*, 504 U.S. at 562. In such cases, causation and redressability ordinarily depend on the choices of independent third parties not before the court. *Id.; Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-46 (1976).

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

Plaintiffs are not the object of the Fund. It does not regulate them, compel them to act, deny them benefits, require them to pay, subject them to enforcement, or adjudicate their rights. Their asserted injury relies upon things other people might do after receiving hypothetical future payments. That is the classic third-party standing defect.

In *FDA v. Alliance for Hippocratic Medicine*, the Supreme Court rejected standing theories based on downstream effects of agency action directed at third parties. 602 U.S. 367 (2024). The Court emphasized that Article III does not permit federal courts to serve as an open forum for generalized complaints about how the Executive Branch regulates, funds, settles, or administers programs. A plaintiff cannot sue merely because government action makes it more likely that independent third parties may act in ways that could burden a plaintiff as alleged here.

The Fund does not regulate Plaintiffs, nor does it command them, deny them benefits or compel them to act. It allegedly may benefit someone else, who may make independent choices, which may later cause Plaintiffs some injury. *Alliance* rejects that form of attenuated standing.

### C.  Plaintiffs' alleged threats predate the Fund and are not fairly traceable to it.

The Complaint itself defeats traceability. Plaintiffs allege that they have received threats, harassment, and confrontations for years. The alleged threats followed January 6, their public testimony and media appearances, clemency, political rhetoric, private fundraising and activism. Compl. ¶¶ 35-50, 93-101.

Those allegations may describe real hostility, but they do not show that the Fund caused it. They show the opposite, the alleged threats predate the Fund and exist independently of it.

When an alleged injury is caused by independent third parties acting for their own reasons, it is not fairly traceable to the challenged government action. *See Allen v. Wright*, 468 U.S. 737, 757-59 (1984); *Simon*, 426 U.S. at 41-46. Plaintiffs do not allege that the Fund created

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

the alleged animus. They allege that preexisting hostile persons may be emboldened by it. That is a conjectural theory of psychological effect, not traceability.

### D. Plaintiffs cannot establish redressability because the requested injunction would not stop the alleged threats.

Redressability requires that the requested relief likely remedy the plaintiff's injury. *Lujan*, 504 U.S. at 561. Plaintiffs cannot meet that requirement here.

Even if this Court enjoined the Fund entirely, it would not undo prior pardons. It would not stop private fundraising, public speech or political organizing. It would not prevent independent persons from making threats. It would not disarm anyone. It would not prohibit harassment or restrain any third party who allegedly threatened Plaintiffs. It would not prevent a person with preexisting animus from acting independently.

The Complaint alleges that threats already exist without Fund payments. If so, extinguishing the Fund will not redress the alleged injury. It will only eliminate a government compensation mechanism for everyone, including unrelated claimants. That is not redressability.

### E. Plaintiffs cannot convert a generalized objection into standing.

The Complaint's first paragraph calls the Fund "taxpayer-funded" and frames the case as an attack on allegedly unlawful public spending. Compl. ¶ 1. But a citizen's objection to allegedly unlawful federal spending is not Article III standing. The Supreme Court has rejected generalized taxpayer and citizen grievances over federal fiscal decisions. *See United States v. Richardson,* 418 U.S. 166 (1974); *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332 (2006).

Plaintiffs cannot avoid the rule by combining public-fisc objections with speculative fear of third-party misconduct. Their theory still depends on the same attenuated chain: future claims, future approvals, future payments, future spending choices, future misconduct, and future injury

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

to Plaintiffs. Calling the Fund a "taxpayer-funded slush fund" does not make that chain less speculative, and it does not convert a generalized grievance into a concrete case or controversy.

**IV.     Plaintiffs' claims are not ripe because there is no approved claim, no payment decision, no claimant, no administrative record, and no Section 4 determination.**

Plaintiffs' claims are not merely unsupported. They are premature.  Ripeness prevents courts from entangling themselves in abstract disagreements before agency action has been felt in a concrete way. *Abbott Laboratories*, 387 U.S. at 148-49; *Nat'l Park Hosp. Ass'n v. Dep't of Interior,* 538 U.S. 803, 807-08 (2003). A claim is not ripe when it rests upon contingent events that may not occur as anticipated, or at all. *Texas*, 523 U.S. at 300. The D.C. Circuit applies that principle to judicial review where the dispute depends on future factual developments. *See Devia*, 492 F.3d 421.

This case is the textbook example of an unripe challenge. Plaintiffs ask the Court to decide whether the Fund will make unlawful payments before any relevant payment exists. No claimant has been identified. No application or commission decision is before the Court. No administrative record exists. No proposed payment amount or debt obligation is before the Court. There is no finding of insurrection or rebellion and no Section 4 determination has been made.

Without those facts, the Court cannot determine whether any payment would assume or pay a debt or obligation incurred in aid of insurrection or rebellion. Nor can it determine whether the payment would injure Plaintiffs, whether that injury would be traceable to Defendants, or whether judicial relief would redress it.  Plaintiffs' request is therefore not a challenge to a concrete final payment decision. It is a preemptive challenge to an uncertain future possibility. Ripeness doctrine forbids that kind of anticipatory adjudication.

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

15

V.    **Plaintiffs' asserted safety injury is outside the zone of interests of the statutes and constitutional provision they invoke.**

The APA does not eliminate Article III. Nor does it allow any plaintiff with a strong objection to agency action to sue under any statute. A plaintiff invoking the APA must identify an agency action that causes legal wrong or adversely affects the plaintiff within the meaning of a relevant statute. 5 U.S.C. § 702. The zone-of-interests test is not especially demanding, but it excludes plaintiffs whose interests are so marginally related to or inconsistent with the purposes of the relevant law that Congress cannot reasonably be understood to have authorized suit. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224-25 (2012); *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 129 (2014).

Plaintiffs' asserted injury is fear of future violence by independent third parties. The statutes and constitutional provision they invoke address different interests.

The Judgment Fund, 31 U.S.C. § 1304, concerns payment of judgments and certain settlements. 28 U.S.C. § 2414 concerns settlement and payment of claims against the United States. Section 4 of the Fourteenth Amendment concerns public assumption or payment of debts or obligations incurred in aid of insurrection or rebellion. None of these provisions is an officer-safety statute. None creates a personal right in Plaintiffs to prevent hypothetical future payments to unidentified claimants. None protects Plaintiffs from speculative future misconduct by independent third parties.

This mismatch is fatal. Plaintiffs have no legal interests protected by the provisions they invoke: they are not creditors, debtors, Fund claimants, denied beneficiaries, regulated parties, compelled payors, or parties to any settlement payment. Fear of future third-party misconduct is not an interest protected by the Judgment Fund statutes, DOJ settlement authority, or Section 4.

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

At most, Plaintiffs assert a generalized interest in government spending combined with fear that a future recipient may misuse money. That is insufficient under Article III and the APA.

**VI.    Section 4 is debt-specific and obligation-specific; it is not a roving license to enjoin all payments to politically disfavored people.**

Even apart from standing, ripeness, and zone of interests, Plaintiffs' Section 4 theory fails on its own terms.  Section 4 does not prohibit "sympathy" or "rhetoric." It does not prohibit every payment to every person Plaintiffs dislike. It prohibits the United States or a State from assuming or paying a "debt or obligation incurred in aid of insurrection or rebellion against the United States." U.S. Const. amend. XIV, § 4.  That requires specificity.

**A.  The Complaint identifies no actual Section 4 payment.**

There is nothing concrete for the Court to adjudicate: no claimant, no application, no approved claim, no payment, no debt, no obligation, no Fund decision, no administrative record, and no judicial finding tying any obligation to insurrection or rebellion. Plaintiffs therefore seek not adjudication, but an anticipatory veto before the legally relevant facts exist.

**B.  Section 4 requires a debt-specific and obligation-specific inquiry.**

The words "debt or obligation" cannot be ignored. Section 4 is not triggered by a generalized label applied to a group. It is triggered, if at all, by a particular public payment of a particular debt or obligation that was incurred in aid of insurrection or rebellion.

That inquiry is inherently individualized. A court would need to know who the claimant is; what payment is proposed; what debt or obligation the payment would assume or satisfy; when the debt or obligation was incurred; why the debt or obligation was incurred; whether the debt or obligation was incurred "in aid of" insurrection or rebellion; and whether the proposed payment would assume or pay that debt or obligation.  Plaintiffs plead none of those facts.

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

17

Instead, Plaintiffs use the word "insurrectionists" as a substitute for the individualized showing the Constitution requires. A constitutional predicate cannot be supplied by epithet.

**C.  Plaintiffs conflate debts incurred in aid of an event with consequences incurred because of prosecution after the event.**

Plaintiffs point to possible compensation for attorneys' fees, restitution, custody time, and other claimed damages arising from prosecution. Compl. ¶¶ 79-83, 161-166. But Section 4 does not bar every payment connected in some broad sense to a person who participated in a disputed event. It bars payment of debts or obligations incurred "in aid of insurrection or rebellion."

Attorneys' fees incurred defending against criminal prosecution are not automatically debts incurred in aid of insurrection. They are debts incurred in response to prosecution. Restitution is not a debt incurred to aid rebellion; it is an obligation imposed as a consequence of conviction. Prison time is not a "debt or obligation" at all in the ordinary financial sense; it is custody. A claimed injury from allegedly unlawful or excessive prosecution is not itself a debt incurred in aid of the prosecuted conduct.

Plaintiffs attempt to leverage an unsupported presumption of insurrectionary debt into a Section 4 prohibition on compensating anyone they label an insurrectionist for any grievance whatsoever against the government. The text does not support that expansion.

**D.  Seditious conspiracy, obstruction, assault, civil disorder, and trespass are not automatic Section 4 determinations.**

Some January 6 defendants were charged with serious crimes. Some were convicted of serious crimes. Some pleaded guilty. Some received pardons or commutations. But none of that automatically resolves the Section 4 question.

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

None of the charges Plaintiffs invoke, obstruction, civil disorder, assaulting, resisting, or impeding officers, or even seditious conspiracy, automatically supplies a Section 4 finding. None adjudicates, without more, that a particular legal bill, restitution obligation, custody-related claim, or damages claim is a "debt or obligation incurred in aid of insurrection or rebellion."

Section 4 contains its own text that Plaintiffs must satisfy. They cannot substitute an editorial narrative of January 6 for the legal elements required to invalidate a particular payment.

## VII. Plaintiffs' requested injunction barring payments "to any claimant" is universal relief that exceeds Article III and traditional equitable limits.

Plaintiffs ask this Court to enjoin Defendants from making payments "to any claimant." Compl. Prayer for Relief ¶ E. That request is overbroad. It is not plaintiff-specific or tied to any concrete, particularized Section 4 violation. It is universal relief against every possible claimant.

### A. Standing is not dispensed in gross.

A plaintiff must establish standing for each claim and each form of relief. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Standing is not "dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).

Plaintiffs may not bootstrap alleged fear of some January 6-related persons into standing to block payments to every unrelated claimant. Even if Plaintiffs had standing to challenge a specific payment to a specific person, that would not give them standing to challenge payments to persons who never threatened them and whose claims arise from unrelated circumstances.

### B. Plaintiffs' requested injunction harms nonparties without redressing injury.

The Fund, even by Plaintiffs' own description, is facially broader than January 6. Plaintiffs admit that the DOJ Fund would compensate people who suffered "weaponization and

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

lawfare." Compl. ¶ 8. Plaintiffs further admit that "among other purposes," the Fund will be used to pay January 6 defendants. Compl. ¶ 9.

"Among other purposes" is fatal to Plaintiffs' requested relief. It confirms their own belief that the Fund may have applications beyond the persons Plaintiffs fear.

Those other claimants are not before the Court. They may include journalists, speakers, whistleblowers, civil litigants, business owners, parents, religious objectors, former public employees, or other citizens who allege that government power was weaponized against them. Their claims may be meritorious or not. But they are not among Plaintiffs' alleged threat actors.

Any injunction cutting off or infringing upon their claims would not redress Plaintiffs' alleged injury. It would merely punish absent, unrepresented nonparties.

### C. Trump v. CASA confirms the danger of universal relief untethered from complete relief to the plaintiffs.

In *Trump v. CASA, Inc.,* 606 U.S. 831 (2025), the Supreme Court emphasized that universal injunctions likely exceed traditional equitable authority when they extend beyond relief necessary to redress the plaintiffs' own injuries. Complete relief for a plaintiff is not the same as universal relief for every person potentially affected by a policy.

This case presents the same danger in especially stark form. Plaintiffs do not merely ask the Court to prevent a specific payment that causes them a concrete injury. They ask the Court to disable the Fund as to "any claimant," including claimants who do not threaten Plaintiffs, are not connected to January 6, and whose claims have no relationship to the alleged injury.

To the extent Plaintiffs seek vacatur rather than an injunction, threshold defects remain. They must still establish Article III standing, ripeness, and a cognizable interest within the scope of the relevant law before obtaining any remedy. *CASA* confirms the broader remedial principle:

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

20

federal courts may not convert a plaintiff-specific dispute into universal control over the rights of absent persons unless necessary to provide complete relief to the plaintiffs before the Court.

### D. Equitable relief must be no broader than necessary.

Even before *CASA*, the Supreme Court made clear that injunctive relief must be no more burdensome than necessary to provide complete relief to the plaintiffs. *Califano v. Yamasaki,* 442 U.S. 682, 702 (1979). A remedy must be limited to redressing the plaintiff's own injury. *Gill v. Whitford,* 585 U.S. 48, 68 (2018).

Plaintiffs' requested injunction fails that rule. Their alleged injury is fear of possible future harm from a subset of potential recipients. Their requested remedy is abolition of payments to all recipients. That mismatch is dispositive.

### VIII.  Plaintiffs cannot obtain an anticipatory veto over hypothetical future payments.

Even if the Court were inclined to believe a future Fund payment could someday present a justiciable Section 4 issue, Plaintiffs cannot obtain an anticipatory veto before any claimant, payment, debt, obligation, or Fund decision exists.

### A. There must be an actual payment or approved claim.

A Section 4 challenge, if one exists, should be directed at a concrete payment or approved claim. Without a claimant, a claim, a debt, an obligation, an administrative record, and a payment decision, the Court cannot perform the analysis Section 4 requires.

### B. Any injunction must be claimant-specific and payment-specific.

If a future Fund decision approves payment to an identified claimant for an identified debt or obligation alleged to fall within Section 4, and a proper plaintiff with standing challenges that concrete decision, a court can address that case then. That is how adjudication works. What

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

21

the Court may not do here is issue an anticipatory injunction against every claimant in the country based on Plaintiffs' prediction that some unidentified future claims might be unlawful.

### C.  Non-January 6 lawfare claimants must remain outside any relief.

Even if the Court were to find standing as to a concrete January 6-related payment, that would not confer standing to extinguish unrelated claims belonging to absent nonparties. Plaintiffs have not alleged, and cannot plausibly allege, that every victim of lawfare or weaponization threatens them.

Therefore, even under the most plaintiff-friendly view, any injunction would have to be limited to actual payments that satisfy all of the following conditions: the payment is to an identified claimant; it satisfies or assumes an identified debt or obligation; the debt or obligation was specifically found, after individualized adjudication, to have been incurred in aid of insurrection or rebellion against the United States; it is fairly traceable to a concrete and imminent injury to Plaintiffs; and the injunction is necessary to redress that injury and is no broader than required to provide complete relief. A broad injunction does not satisfy these conditions.

### D.  The Court should not let Plaintiffs use Section 4 to attack all lawfare claims.

The phrase "lawfare" is not owned by any faction. Legal weaponization can be alleged by citizens across the political spectrum. It may involve censorship, platform coercion, retaliatory investigations, selective enforcement, abusive incarceration, reputational destruction, malicious litigation, politically motivated prosecutions, improper subpoenas, or state-linked private action.

Whether any particular claimant proves such injury is a separate question. But those claims should rise or fall on their own facts. They should not be eliminated because Plaintiffs

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

22

fear some different category of persons.  The Court should reject Plaintiffs' attempt to transform Section 4 into a weapon against every claimant who alleges lawfare or weaponization.

### IX.    The Court should protect its docket from weaponized public-interest litigation and consider sua sponte Rule 11 or inherent-authority review.

The Court's obligation does not end with dismissal. Rule 11 requires attorneys to certify that pleadings are not filed for an improper purpose, that legal contentions are warranted by existing law or a nonfrivolous extension of it, and that factual contentions have evidentiary support. Fed. R. Civ. P. 11(b). Rule 11 also permits the Court, on its own initiative, to order an attorney, law firm, or party to show cause why Rule 11(b) has not been violated. Fed. R. Civ. P. 11(c)(3). The Court likewise retains inherent authority to sanction bad-faith litigation conduct and protect the integrity of its proceedings. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991).

This pleading is so defective in its construction that the Court may wish to consider whether continued advocacy of its core theories warrants sua sponte Rule 11 or inherent-authority review. Plaintiffs and their counsel filed a Complaint that opens with political invective, substitutes slogans for facts, invokes Section 4 without a legally operative insurrection predicate, identifies no approved claim or payment, rests standing on a speculative chain of future third-party conduct, and seeks universal relief barring payments "to any claimant." Those defects are not technical. They go to jurisdiction, ripeness, causation, redressability, merits, and remedy. Public-interest or nonprofit branding does not immunize a pleading from Rule 11 scrutiny.

The Court need not adjudicate an organization's tax status to recognize that lawyers appearing in federal court remain officers of the Court regardless of the branding or tax status of an entity that employs, supports, or coordinates their work. If a nominal public-interest or

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

nonprofit litigation structure is used to package partisan objectives as constitutional litigation, the Court may consider that context in assessing improper purpose, bad faith, and docket abuse.

Amicus has previously warned, in a brief accepted for filing in this District, that tax-exempt and public-interest legal structures can be used to hide ideologically driven lawfare. *See Amicus Br., American Oversight v. Hegseth, No. 1:25-cv-00883-JEB, ECF No. 29 (D.D.C. May 20, 2025)*. That brief addressed nonprofit structures, improperly shared resources, politically partisan objectives, and the risk of courts themselves being conscripted into lawfare political litigation tactics.

Dismissal should be the minimum response. If Plaintiffs or counsel continue to press the Complaint's facially defective theories after these defects have been identified, the Court should consider whether to invoke Rule 11(c)(3) or its inherent authority to require an explanation why sanctions should not issue.

## CONCLUSION

Plaintiffs ask this Court to take the extraordinary step of dissolving an entire federal compensation process before any specific claimant has been identified, before any specific payment has been approved, before any specific debt or obligation has been articulated, before any specific Section 4 finding has been made, and before Plaintiffs have shown that any concrete and imminent injury is fairly traceable to the Fund or redressable by the relief sought.

Article III does not permit that result. Ripeness doctrine does not permit that result. Section 4 does not permit that result. Traditional equitable limits do not permit that result.

For the foregoing reasons, amicus curiae respectfully requests that the Court dismiss the Complaint for lack of Article III standing or on any other grounds the Court deems proper.

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING

In the alternative, if the Court reaches the merits or considers preliminary or permanent injunctive relief, amicus respectfully requests that the Court deny any universal injunction; deny any request to bar payments "to any claimant"; and limit any relief, if relief is entered at all, to identified payments actually found unlawful after individualized adjudication satisfying Article III, ripeness, Section 4, and traditional equitable limits.

Dated: May 21, 2026

Respectfully submitted,

Jason Goodman
Amicus Curiae Pro Se
252 7th Avenue Apt 6S
New York, NY 10001
347-201-6017
truth@crowdsourcethetruth.org

[PROPOSED] BRIEF OF AMICUS CURIAE JASON GOODMAN IN
SUPPORT OF DISMISSAL FOR LACK OF ARTICLE III STANDING