**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HARRY DUNN**, *et al.,* § | |
| § | Civil Action No. 26-1719 (RJL) |
| Plaintiffs, § | |
| § | |
| vs. § | |
| § | |
| **DONALD J. TRUMP**, *et al.*, § | |
| § | |
| Defendants. § | |

**KEVIN TRUDEAU'S MOTION TO INTERVENE UNDER
FEDERAL RULE OF CIVIL PROCEDURE 24**

Kevin Trudeau, through undersigned counsel, respectfully moves this Court for an Order

recognizing his right to intervene under Fed. R. Civ. P. 24(a) in order to defend the lawfulness of

the Anti-Weaponization Fund and the validity of his claim for payment therefrom, which he filed

by letter on May 22, 2026. In the alternative, Trudeau seeks permission to intervene under Fed. R.

Civ. P. 24(b). Pursuant to Local Civil Rule 7(m), Trudeau's counsel conferred with Plaintiffs'

counsel, who advised that Plaintiffs oppose the relief sought in this motion. Defendants have not

yet entered appearances in this action; their positions are unknown.

**Introduction**

Kevin Trudeau is a claimant as to the Anti-Weaponization Fund, and Rule 24(a) entitles

him to intervene to defend it. Plaintiffs ask this Court to set aside the Fund's creation, to reverse

the transfer of $1,776,000,000 that will finance it, and to enjoin any payment to any claimant.

Compl., Prayer ¶¶ A–E. Should Plaintiffs prevail, the Fund would never exist, and Trudeau's filed

claim against it would be extinguished.

Trudeau satisfies each requirement for intervention as of right. He holds a direct interest in

the Fund and in his claim against it; the relief Plaintiffs seek would impair that interest as a practical

1

matter; and the existing parties will not adequately represent it. The Settlement Agreement obligates its parties, including the United States, to defend it against challenges in any forum, ECF No. 1-2 at 6, and Trudeau does not doubt that Defendants will do so. They answer, however, to the public and to the institutional prerogatives of the Executive, while Trudeau's interest is the narrower, personal one of being paid on his claim. Rule 24(a)(2) asks only whether existing representation "may be" inadequate, and the adequacy of representation of a private claimant's stake by a government defendant has long warranted careful examination in this Circuit. *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015) (reversing denial of intervention as of right to a private nonprofit that sought to defend a Federal Election Commission ruling in its favor, holding that the agency's agreement with the nonprofit's litigation position did not make the agency an adequate representative of the nonprofit's distinct interest); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003) (reversing denial of intervention as of right to a foreign government agency that intervened to defend an Endangered Species Act decision where the agency and the U.S. Government agreed the existing rules were lawful yet the agency's interest in preserving its own sport-hunting revenue diverged from the U.S. Government's duty to the American people).

In the alternative, the questions of law and fact common to Trudeau's defense of the Fund and to the claims in this suit warrant permissive intervention under Rule 24(b). On either basis, this Court should grant Trudeau leave to intervene.

### Background

The Anti-Weaponization Fund is a mechanism the United States created to compensate victims of government targeting, and Trudeau is among the claimants it was designed to serve.

The United States created the Fund through the settlement of *Trump v. IRS*. Compl. ¶ 76. The Fund is to be administered by a five-member commission whose members are appointed by the Attorney General and may be removed by the President. Compl. ¶ 77; ECF No. 1-2 at 3. It is to be funded by a fixed payment of $1,776,000,000. Compl. ¶ 78.

The Fund exists to redress claims of those who, like the settling plaintiffs, "incurred harm from similar Lawfare and Weaponization." ECF No. 1-2 at 3. The Settlement Agreement defines "Lawfare" and "Weaponization" to include the government's targeting of individuals "for improper and unlawful political, personal, and/or ideological reasons." ECF No. 1-2 at 2. To be eligible, a claimant "must assert at least one legal claim stating that the claimant was a victim of Lawfare and/or Weaponization." ECF No. 1-2 at 4.

The Fund is finite and time-limited. It must "cease processing claims no later than December 1, 2028," and any balance remaining thereafter reverts to the federal government. ECF No. 1-2 at 4. Within those limits, the Fund determines its own procedures and may "grant claims in whole or in part, deny claims in whole or in part, [or] defer review of claims." ECF No. 1-2 at 3–4. In evaluating a claim, the Fund considers the totality of the circumstances, including the claimant's "actual damages incurred as a result of the Lawfare and Weaponization," the "[r]easonable attorneys' fees paid by the claimant," and "[a]ny time the claimant spent in prison [. . .] as a result of the Lawfare and Weaponization." ECF No. 1-2 at 4–5.

Trudeau is a claimant to the Fund. He maintains that the federal government prosecuted and imprisoned him for protected expression in his books and broadcasts, and that the prosecution rested on views he published rather than on any harm to any person. Trudeau Decl. ¶¶ 7–18. He had no involvement in the events at the United States Capitol on January 6, 2021. Trudeau Decl. ¶

19. On May 22, 2026, Trudeau lodged a formal claim with the Fund seeking $10,000,000, and the claim was received by the U.S. Department of Justice on May 27, 2026. Trudeau Decl. ¶ 21.

Plaintiffs ask this Court to set aside the Fund's creation and its funding and to enjoin any payment to any claimant. Compl., Prayer ¶¶ A–E. That relief would extinguish Trudeau's claim.

## Legal Standard

Trudeau satisfies the requirements for intervention as of right, and he independently establishes Article III standing.

A party may intervene as of right when it satisfies four requirements: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998); *accord Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008). A proposed intervenor-defendant must also establish standing by showing injury in fact, causation, and redressability. *Fund for Animals*, 322 F.3d at 732–33; *Crossroads*, 788 F.3d at 316.

The fourth requirement imposes a light burden. A movant "need only show that representation of his interest 'may be' inadequate, not that representation will in fact be inadequate." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986). That burden "should be treated as minimal," *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972), and it falls on those who oppose intervention, *United States v. AT&T*, 642 F.2d 1285, 1293 (D.C. Cir. 1980) (*citing Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir. 1969)).

**ARGUMENT**

**I. Trudeau is entitled to intervene as of right.**

Trudeau satisfies each of the four requirements. The decisive question is the fourth—whether the existing parties will adequately represent his interest—and they will not.

**A. Trudeau has Article III standing.**

Trudeau has standing because Plaintiffs' suit threatens him with a concrete and imminent loss that a judgment in Defendants' favor would prevent.

Trudeau's injury is the threatened dissolution of the Fund and the resulting loss of his ability to recover on his pending claim. The Court of Appeals recognizes the threatened loss of a favorable government action as a cognizable injury: "even where the possibility of prevailing on the merits after remand is speculative, a party seeking to uphold a favorable ruling can still suffer a concrete injury in fact." *Crossroads*, 788 F.3d at 317. Trudeau's stake is at least as concrete, because Plaintiffs seek to destroy the Fund outright rather than to remand any question for further consideration.

**B. The application is timely.**

Trudeau's application is timely. He moves to intervene at the outset of the case, before any Defendant has answered or entered an appearance. *Cf. id.* at 320. No party could be prejudiced by intervention at this stage.

**C. Trudeau has a legally protected interest in the subject of this action.**

Trudeau holds a legally protected interest in the Fund's corpus and in his pending claim against it, which is the property and transaction at the center of this action. Fed. R. Civ. P. 24(a)(2). In this Circuit the interest inquiry and the standing inquiry are measured together, so the showing already made establishes this requirement as well. *Fund for Animals*, 322 F.3d at 735.

Trudeau's claim arises from his position that the government targeted him for protected expression in his books and broadcasts, which is the ideological targeting the Fund was created to redress. The Fund compensates victims of "Lawfare and/or Weaponization," a category defined to include government targeting for "political, personal, and/or ideological reasons." ECF No. 1-2 at 2. A claimant qualifies by asserting "at least one legal claim stating that the claimant was a victim of Lawfare and/or Weaponization," ECF No. 1-2 at 4, and Trudeau has lodged such a claim, Trudeau Decl. ¶¶ 18, 21.

Candidly, Trudeau has not yet been awarded anything, and the Fund retains discretion to "grant claims in whole or in part [or] deny claims in whole or in part." ECF No. 1-2 at 3–4. That contingency does not defeat his interest. In *Fund for Animals*, the intervenor's revenue interest depended on a listing decision and its downstream effects, yet the court held the interest sufficient to support intervention as of right. 322 F.3d at 733–35. The Fund's discretion bears on how much Trudeau ultimately recovers; the relief Plaintiffs seek determines whether he can recover at all.

Plaintiffs may invoke the Settlement Agreement's statement that it "is enforceable and challengeable solely by Plaintiffs, Defendants, and the United States," ECF No. 1-2 at 5, together with *SEC v. Prudential*. The provision poses no bar to intervention. First, it governs who may enforce or challenge the agreement, and Trudeau does neither; he defends the Fund as a stranger to the contract, and "intervenors of right need only an 'interest' in the litigation—not a 'cause of action' or 'permission to sue.'" *Jones v. Prince George's County*, 348 F.3d 1014, 1018 (D.C. Cir. 2003). Second, *Prudential* is distinguishable, because the would-be intervenors there sought to enforce a consent decree to obtain larger awards, and the decree's text showed that the parties intended to confer no third-party enforcement right. 136 F.3d at 154–56. Trudeau seeks to preserve the Fund, not to enforce its terms against the parties. Finally, were the provision read to bar

outsiders from challenging the Fund, that reading would foreclose Plaintiffs' own suit. On no reading does it bar a claimant who comes to defend. Trudeau has a protected interest in the subject of this action.

**D.  The disposition of this action would impair Trudeau's interest.**

Rule 24(a)(2) asks whether the disposition "may as a practical matter impair or impede" the movant's ability to protect its interest. Fed. R. Civ. P. 24(a)(2). Dissolution of the Fund would extinguish Trudeau's claim outright. Short of dissolution, an order setting aside the Fund's creation or its funding would, at a minimum, make "the task of reestablishing the status quo [. . .] difficult and burdensome." *Fund for Animals*, 322 F.3d at 735. The requested relief would thus impair Trudeau's interest.

**E.  No existing party will adequately represent Trudeau's interest.**

No existing party will adequately represent Trudeau's interest. The Settlement Agreement obligates the United States to defend it against challenges in any forum, ECF No. 1-2 at 6, and Trudeau does not question that the Defendants will mount that defense. A party that represents the public and the institutional interests of the Executive is, for that very reason, an imperfect representative of a single private claimant whose object is to be paid, and Rule 24(a)(2) requires no more than a showing that representation "may be" inadequate. *Dimond*, 792 F.2d at 192.

*First*, the governing standard is forgiving, and this Circuit examines a government party's representation of a private intervenor's interest with care. The movant's burden "should be treated as minimal," *Trbovich*, 404 U.S. at 538 n.10, and the burden of showing adequacy rests on those who oppose intervention, *AT&T*, 642 F.2d at 1293. The Court of Appeals has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors," *Fund for Animals*, 322 F.3d at 736, and has cautioned that it "look[s] skeptically on government entities

serving as adequate advocates for private parties," *Crossroads*, 788 F.3d at 320; *id.* at 314 (observing that even "a doubtful friend" may furnish uncertain representation).

*Second*, the government and Trudeau hold interests that diverge in scope, and that divergence defeats adequacy. *Fund for Animals* already decided what it means for a federal defendant to represent a private party that seeks to defend a favorable federal action. Conservation groups there sued the Secretary of the Interior and the Fish and Wildlife Service ("FWS") over a decision not to list argali sheep as endangered, and the Natural Resources Department of Mongolia moved to intervene as a defendant to protect sport-hunting revenue that such a listing would diminish. 322 F.3d at 730–31. The Mongolian agency and the federal defendants agreed that the existing rules (permitting hunting of argali sheep) were lawful. *Id.* at 736. The Court held representation inadequate even so, explaining that "the FWS's obligation is to represent the interests of the American people [. . .] while the [agency's] concern is for [its own]" interest. *Id.* The same divergence governs here. The Defendants defend the Fund's validity and the Executive's settlement authority on behalf of the public; Trudeau's concern is the personal one of recovering on his claim. They share an immediate objective, yet their interests differ, and *Fund for Animals* holds that a shared objective of that kind does not establish adequacy.

*Third*, the government controls the conduct and any settlement of this litigation, and a party with that control does not adequately represent a claimant whose stake lies in the outcome. In *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 906–07 (D.C. Cir. 1977), a government party had settled, and might further settle, with the plaintiff. Environmental groups there sued the EPA and reached a settlement obligating the agency to issue water-pollution regulations on a fixed timetable; regulated rubber and chemical companies moved to intervene to protect their stake in the settlement's terms and in the rulemakings to follow. *Id.* The court held representation

inadequate because the "EPA [was] broadly concerned with implementation and enforcement of the settlement agreement, [while the intervenors were] more narrowly focus[ed] on the proceedings that may affect their industries," so their interests "may not coincide." *Id.* at 912. The Defendants occupy the EPA's position. They are broadly concerned with defending the Fund and the Executive's authority, and they control any resolution of this suit; Trudeau is narrowly focused on the criteria, corpus, and operation that determine whether and how much he is paid.

*Fourth*, the divergences in this case are concrete and foreseeable.

The government controls any settlement of this suit, and it could agree to terms that preserve the Executive's litigating position while narrowing or compromising the recovery available to claimants. It is conceivable, for instance, that settlement results in restricting the Fund from paying claims to January 6 participants; it is also conceivable that settlement achieves the *opposite* result, paying *only* January 6 participants (but perhaps paying certain individual January 6 participants who meet yet-unknown criteria negotiated in settlement talks—criteria that Trudeau could not meet because he was not a January 6 participant). In the latter event, Trudeau would lose his interest entirely, even if the Fund were otherwise upheld in a manner that is fully consistent with the terms of its creation. That is the risk *Costle* identified, and the Court of Appeals has likewise recognized that the real threat to an absent party's interest can lie in the government party's settlement decisions rather than in the litigation itself. *Crossroads*, 788 F.3d at 318.

Moreover, Count III attacks the specific compensation criteria on which Trudeau's recovery depends. It alleges that the Fund unlawfully directs the commission to "consider" each claimant's "actual damages," "attorneys' fees paid," and "time [. . .] spent in prison," Compl. ¶ 165; ECF No. 1-2 at 4–5, and it asks this Court to set those criteria aside. Trudeau's recovery turns on precisely those criteria, because he was billed more than $10,000,000 in legal fees and served

a ten-year sentence. Trudeau Decl. ¶¶ 9, 14. The government has no comparable institutional stake in defending those particular criteria, and it may defend the Fund's existence without defending the measures that fix the size of Trudeau's award.

Further, because any balance remaining in the Fund reverts to the federal government, ECF No. 1-2 at 4, the government holds a fiscal incentive that runs opposite to large individual awards. A dollar the Fund does not pay to a claimant is a dollar returned to the United States.

Relatedly, the Fund holds a fixed corpus and must stop accepting claims by December 1, 2028. ECF No. 1-2 at 4. Trudeau understands that the Fund may receive claims from a great many people. Trudeau Decl. ¶ 23. Because the corpus is finite and the claimants potentially numerous, Trudeau's recovery depends on the Fund's scope, its criteria, and its timely operation, and on his obtaining a share commensurate with the gravity of his injury rather than a bare equal share. Trudeau Decl. ¶ 23. The government's interest is satisfied so long as the Fund stands; it has no reason to press Trudeau's distinct interest in a recovery proportioned to a decade of imprisonment and the loss of his globally successful businesses.

*Fifth*, Trudeau offers argument and evidence that the government will not. He is a living claimant with no connection to the events of January 6, 2021, and his documented experience shows that the Fund may serve purposes for ordinary people who did not participate in those events. Trudeau Decl. ¶¶ 5–19. The government, defending the Fund in the abstract, has no reason to place a particular claimant's account before this Court. A movant whose interest is "similar but not identical" to an existing party's, and who "does not face the identical harm" the existing party faces, is ordinarily entitled to intervene. *AT&T*, 642 F.2d at 1293.

No existing party will adequately represent Trudeau's interest, and this Court should grant him leave to intervene as of right.

## II.  In the alternative, this Court should grant permissive intervention.

Finally, even if this Court concludes that Trudeau does not satisfy Rule 24(a)(2), it should permit him to intervene under Rule 24(b). A court may permit intervention by one who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Trudeau's defense of the Fund shares the central questions in this suit: whether the Fund was lawfully created and funded, and whether its operation is lawful. In exercising its discretion, the court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Intervention here would do neither. Trudeau moves at the earliest stage of the case, and he is prepared to accept reasonable conditions to streamline his participation, including coordinated briefing. This Court has granted intervention to defenders of challenged federal action on comparable terms. *Ass'n of O&C Counties v. Trump*, 2018 U.S. Dist. LEXIS 243643, at *6 (D.D.C. 2018); *Swanson Group Mfg. LLC v. Salazar*, 2012 U.S. Dist. LEXIS 14630, at *2–3 (D.D.C. 2012).

### Conclusion

For these reasons, this Court should grant Trudeau leave to intervene so that he may defend the Anti-Weaponization Fund and his claim against it.

**Date**:  June 1, 2026

Respectfully submitted,

/s/   Kyle Singhal
Kyle Singhal (D.C. Bar No. 1601108)
Hopwood & Singhal PLLC
1701 Pennsylvania Ave., N.W. #200
Washington, DC 20006
(202) 769-4080
kyle@hopwoodsinghal.com
*Counsel for Kevin Trudeau*

11