**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

HARRY DUNN and DANIEL HODGES,

Plaintiffs,

v.                                                                         **Civil Action No. 1:26-cv-01719**

DONALD J. TRUMP, et al.,

Defendants.

**SUPPLEMENTAL AMICUS SUBMISSION: <u>SHAUNESI DEBERRY (RE: THE GWENDOLYN E. WHITE FEDERAL CONTRACTOR TARGET/PENTAGON SCHEMATICS DEMAND STORY)</u>**

Proposed Amicus Curiae Shaunesi DeBerry respectfully submits this Supplemental Amicus Submission in further support of the arguments presented in her Motion for Leave to File Amicus Curiae Brief and Proposed Amicus Curiae Brief filed on May 20, 2026 (ECF No. 5).

As set forth in ECF No. 5, the undersigned argued that the Attorney General's May 18, 2026 Order establishing the Anti-Weaponization Fund should not be construed as limited exclusively to January 6-related claimants because the Order expressly references the projected valuation of "future claimants' claims" and does not, on its face, restrict eligibility to any single category of applicant.

This supplemental filing does not alter the position previously advanced. Rather, it provides additional publicly available information and a contemporary example that further illustrates why potential future claimants may exist outside the January 6 context and why caution is warranted before adopting an interpretation that would prematurely narrow the universe of potential beneficiaries contemplated by the Attorney General's Order.

**SUPPLEMENTAL FACTUAL CONTEXT**

The Attorney General's May 18, 2026 Order establishing the Anti-Weaponization Fund expressly references the projected valuation of "future claimants' claims." The Order does not limit those future claimants to January 6 defendants, Capitol participants, or any particular political affiliation.

**EXHIBIT A – ATTORNEY GENERAL ORDER HIGHLIGHTING "FUTURE CLAIMANTS' CLAIMS"**

<span style="color:blue">**Figure 1. Attorney General Order referencing projected valuation of future claimants' claims.**</span>

1



**Office of the Attorney General**
**Washington, D. C. 20530**

May 18, 2026

A. The Settlement Agreement in *Trump v. Internal Revenue Service*, No. 1:26-cv-20609 (S.D. Fla.). has created the Anti-Weaponization Fund (the "Fund"). The Settlement Agreement directed the Attorney General to issue an order establishing funding and any other relevant requirements for the Fund.

B. Capitalized terms in this document shall have the same meaning as in the Settlement Agreement.

C. Within 60 days of the Effective Date, the United States shall provide the U.S. Department of the Treasury with all necessary forms and documentation to direct a payment of $1,776,000,000 to an account for the sole use by the Anti-Weaponization Fund ("Designated Account"). The corpus of the Anti-Weaponization Fund's funding does not represent the value of any claim by Plaintiffs, but rather is based on the projected valuation of future claimants' claims.

D. Once the funds are deposited into the Designated Account, the United States has no liability whatsoever for the protection or safeguarding of those funds, regardless of bank failure, fraudulent transfers, or any other fraud or misuse of the funds.

E. The funds deposited into the Designated Account may be used to pay for per diems, administrative services, funds, facilities, staff, travel, and other support services as may be necessary to carry out the mission of the Anti-Weaponization Fund. The Members of the Anti-Weaponization Fund shall serve as volunteers and gratuitous service providers, without any further compensation for their work on the Fund. They are allowed travel expenses, including per diem in lieu of subsistence, to the extent permitted by law.

F. None of the funds deposited or claimed shall be deemed to qualify for reimbursement by the Department of Justice to the Treasury or to the judgment fund.

G. Funding of the Anti-Weaponization Fund fully accords with longstanding authorities. The Automatic Payment of Judgments Act, ch. 748, § 1302, 70 Stat. 678, 694–95 (1956) (codified as amended at 31 U.S.C. § 1304), known as the Judgment Fund, established a permanent appropriation for the payment of settlements against the United States. The government may pay a settlement out of the Judgment Fund if: (1) the payment is not otherwise provided for; (2) the Secretary of the Treasury has certified the payment; and (3) the judgment is payable under one of several specified statutory provisions. *See Appropriate Source for Payment of Judgments and Settlements in United States v. Winstar Corp. and Related Cases*, 22 Op. O.L.C. 141, 153 (1998). Congress has provided for the payment of "final" judgments rendered against the United States, including "compromise settlements" and "imminent" claims. 28 U.S.C. § 2414.

H. Previous cases have been settled on similar terms. For example, in the *Keepseagle* litigation, the plaintiffs alleged improper behavior by the Department of Agriculture over a period of years, and the Obama Administration settled the case by establishing an

administrative claims process funded by $680,000,000 paid from the Judgment Fund, which was deposited into a bank account to fund the claims received. *Keepseagle v. Vilsack*, 102 F. Supp. 3d 306, 309 (D.D.C. 2015); *see also Garcia v. Vilsack*, No. 00–2445 (D.D.C.) & *Love v. Vilsack*, No. 00–02502 (D.D.C.).

Todd Blanche
Acting Attorney General

The circumstances discussed below are offered solely as an illustrative example of the broader principle advanced in ECF No. 5: namely, that publicly documented individuals alleging

governmental targeting, retaliation, selective enforcement, or related misconduct may exist outside the January 6 context and therefore may represent categories of potential future claimants contemplated by the Anti-Weaponization Fund.

Gwendolyn E. White, a North Carolina resident and former federal contractor, has publicly alleged that she became the subject of governmental targeting during the Biden Administration after refusing requests she associated with Pentagon-related schematics and sensitive federal information. According to publicly available records and public statements, Ms. White repeatedly sought assistance from civil rights organizations, federal authorities, and governmental agencies regarding those concerns.

Publicly available correspondence reflects that Ms. White sought assistance through the NAACP. In response, NAACP Senior Counsel Anson Asaka advised that the organization lacked the resources to provide representation and referred Ms. White to the Federal Bureau of Investigation, the United States Department of Justice Civil Rights Division, and the North Carolina Attorney General's Office.

**EXHIBIT B – NAACP CORRESPONDENCE- NAACP SENIOR COUNSEL ANSON ASAKA**

**Figure 2. Correspondence reflecting referral to federal and state authorities.**



Ms. White's publicly available professional background reflects substantial experience involving government-related compliance, security, risk management, criminal justice, and federal-level contracting work.

**EXHIBIT C – RESUME EXCERPTS : FORMER PENTAGON TARGETED INDIVIDUAL GWENDOLYN E. WHITE**

**Figure 3. Resume excerpts reflecting government-related compliance, security, and contractor experience.**



Gwendolyn E. White · 2nd

RETIRED (29yrs), Sr. IT HIPPA Security & Compliance Criminologist/Forensic III

Raleigh-Durham-Chapel Hill Area · **Contact info**

283 connections

Rico is a mutual connection

Message    Pending    More

Executive Office of Technology Services and …

North Carolina Central University

**About**

Looking at possibly rejoining the workforce, if possible in one of the following areas:
• Sr. IT HIPPA Security & Compliance Criminologist/Forensic III
• Sr. AML & Fraud Specialist III
• Sr. PMP,
• Sr. RMP,
• Sr. Scrum Master II,
• Sr. IT Network Policy Writer
• Sr. IT Security & Compliance Specialist III
• Sr. NIST Guru
Resourceful, proficient, very honest, loyal, transparent, earnest with time, fruitful to gain the best outcome in

| GWENDOLYN'S BUSINESS COMPETENCIES | Proficiency (Years) | Management Skills | Proficiency Level (Years) |
|---|---|---|---|
| **Region: US, Canada, Europe, Netherlands, Japan, Venezuela, & Mexico and Germany.** | 25+ years | **Project Management – budget up to 125M/ completed 157 projects YTD** | 25+ years |
| **Project Manager over**<br>  o   In excess 125M – 25+years, as a Sr. Financial BA.<br>**License, Certifications & Professional Training:**<br>  o   Notary Public in NC (200632500052)<br>  o   Currently, maintain a Federal Secret Security Clearance (SCC) and Confidential Clearance at level GS14/15 and at the State level, holds a level 86<br>  o   Enterprise Resource Planning (ERP) Train the Trainer 1.1, 1-10; ERP Train the Trainer 1.0, 10-08<br>  o   Management Internal Control Training, 4-08; 4-09; 4-10; 4-11<br>  o   L6S – Black Belt Training, 11-07; L6S – Green Belt Training (Week 1), 10-06; L6S – White Belt Training, 2-06<br>  o   Graduate - New Leader Program, 12-04<br>  o   Graduate-Master's Certificate of Completion in Project Management, 10-02<br>  o   ERP Customer Order Operations Supervision, 32hrs, 3-11 and ERP Customer Order Operations, 32 hrs, 3-11<br>  o   Buyer Purchase Card PR TTT, 8hrs, 3-11<br>  o   ERP Buyer MILSTRIP TTT, 72hrs, 3-11, ERP Purchasing Requisitioning Approval, Phase II, 8hrs, 3-11, ERP Purchasing Requisitioning, Phase II TTT, 32hrs, 3-11, ERP Buyer Contracts, Phase II TTT, 32 hrs, 3-11<br>  o   Quantitative Decision Making, 02-10<br>  o   Effective Communication Skills for Professionals 05-06<br>  o   Management of IT Professional, Project Leadership, Disaster Recovery, Infection Control/Isolation, Chemical Safety 07-06<br>  o   Business Writing, Technical Writing, NCTI Excellence in Customer Service 03-05<br>  o   American Red Cross -Workplace Training: Adult CPR, First Aid, Fire Safety, W-P Violence Awareness, Basic Life Support, Overview of US Pharmaceutics Commercial Practices Polices and Governing Laws and Regulatory Compliance with Pharmaceutics 04-03/09-04<br>  o   Managing Projects in Organizations; 03/4-8/02<br>  o   Project Leadership, Management and Communication, 04-02<br>  o   Cost and Scheduling Control , 05-02<br>  o   Risk Management Professional (RMP) 07-02/08-02<br>  o   Contracting for Project Management, 08-02<br>  o   Project Management Professional (PMP) 06-02<br>**Additional Training:**<br>  o   Effective Communication Skills for Professionals<br>  o   Management of IT Professional<br>  o   Project Leadership<br>  o   Disaster Recovery<br>  o   Infection Control/Isolation<br>  o   Chemical Safety<br>  o   Business Writing, Technical Writing,<br>  o   NCTI Excellence in Customer Service<br>  o   American Red Cross -Workplace Training: Adult CPR, First Aid, Fire Safety, W-P Violence Awareness, Basic Life Support, Overview of US Pharmaceutics Commercial Practices Polices<br>  o   Governing Laws and Regulatory Compliance with Pharmaceutics.<br>**Compliance Areas of Internal Control Management**<br>  o   302, 404, 802 IT Privacy & Security compliance [i.e., Fed/State Privacy and security laws, directives, regulations, requirements, N.C.G.S., HIPAA, SMART, SWOTT, Disaster Recovery, Disaster Avoidance, COOP, PHI, EHR, EHI, III, | 25+ years | **SoX - Sarbanes-Oxley IT Controls Narratives:**<br>  o   Wrote 78 IT laws, policies, procedures, standards and 9 manual for both Federal and State Government; and performing Integrations, Implementations, SDLC, Up-grades, etc.<br>**Remediations: As Is/Walk-throughs**<br>  o   Completed 17 Projects in IT and Compliance Governance**Error! Bookmark not defined.**<br><br>**1.21 Information Technology Controls**Error! Bookmark not defined.<br>   1.21.1 General IT Methodology**Error! Bookmark not defined.**<br>   1.21.1a IS Executive Summary**Error! Bookmark not defined.**<br>   1.21.1b IS Strategic Plan – General Explanation**Error! Bookmark not defined.**<br>   1.21.1c Control Methods per COSO Component:**Error! Bookmark not defined.**<br>   1.21.1.1 Job Descriptions**Error! Bookmark not defined.**<br>   1.21.1.2 Reporting Structure**Error! Bookmark not defined.**<br>   1.21.1.2.1 Segregation of Duties**Error! Bookmark not defined.**<br>   1.21.1.3 Service Contracts, Vendors and Contractors**Error! Bookmark not defined.**<br>   1.21.1.3a Contracts Change Management Control Process Flow**Error! Bookmark not defined.**<br>   1.21.1.3.b Service Level Agreement (SLA) and Monitoring**Error! Bookmark not defined.**<br>   1.21.1.4 Mission Critical Application Documentation**Error! Bookmark not defined.**<br>   1.21.1.5 Roles and Responsibilities**Error! Bookmark not defined.**<br>   1.21.1.5.1 Director of Information Services**Error! Bookmark not defined.**<br>   1.21.1.5.2 Manager IS Network/LAN/Telcom Systems**Error! Bookmark not defined.**<br>   1.21.1.5.3 Manager IS Customer Service**Error! Bookmark not defined.**<br>   1.21.1.5.4 Manager IS Business Systems & Technology**Error! Bookmark not defined.**<br>   1.21.1.5.5 Manager IS Operations**Error! Bookmark not defined.**<br>   1.21.1.5.6 Users of Information Services Software**Error! Bookmark not defined.**<br>   1.21.1.5.7 Disciplinary Action**Error! Bookmark not defined.**<br>   1.21.1.5.8 New Employee Setup Procedures**Error! Bookmark not defined.**<br>   1.21.1.5.9 Employee Separation Procedures **Error! Bookmark not defined.**<br>**1.21.2 Security Administration and Management**Error! Bookmark not defined.<br>   1.21.2.1 IS Logical Security**Error! Bookmark not defined.**<br>   1.21.2.2 Password Policy**Error! Bookmark not defined.**<br>   1.21.2.3 Access Levels Template**Error! Bookmark not defined.**<br>   1.21.2.4 Anti-Virus**Error! Bookmark not defined.**<br>   1.21.2.5 Physical Security<br>   1.21.2.6 Data Center/Computer Facilities Badge Access Control**Error! Bookmark not defined.**<br>   1.21.2.6a Data Center Layouts/Schematics – Central**Error! Bookmark not defined.**<br>   1.21.2.6b Data Center Layouts/Schematics – Third-Party**Error! Bookmark not defined.**<br>   1.21.2.7 Documentation of Physical Securities**Error! Bookmark not defined.**<br>   1.21.2.8 Physical Access Control**Error! Bookmark not defined.** | 18+ years |

According to Ms. White's public statements, which are presently the subject of ongoing media coverage by WRAL-TV, The News & Observer, The NC Beat, and numerous social media platforms, the concerns she reported were not resolved through the channels to which she was referred. Rather, Ms. White has consistently maintained that the alleged targeting, retaliation, interference, and related harms continued over a period of years despite her efforts to seek assistance from civil rights organizations, law enforcement authorities, and governmental agencies.

Those allegations have since become intertwined with multiple state court proceedings, estate litigation, civil litigation, competency-related proceedings, and highly publicized criminal matters currently pending in North Carolina.

**EXHIBIT D – WRAL-TV COVERAGE-Web Editor: Ryan Bisesi**

**Figure 4. Representative WRAL-TV reporting concerning Ms. White and related proceedings.**



LOCAL NEWS

**Raleigh police put patrol advisory on attorney shooting suspect months before crime**

A long paper trail of incidents involving Gwendolyn White precedes the court's determination of her capacity to proceed with a mental health exam.

Details    Transcript

A long paper trail of incidents involving Gwendolyn White precedes the court's determination of her capacity to proceed with a mental health exam.

Web Editor: Ryan Bisesi

Posted 12:15 p.m. May 27 — Updated 12:15 p.m. May 27

**EXHIBIT E – THE NEWS & OBSERVER COVERAGE**

**Figure 5. Representative News & Observer reporting concerning Ms. White and related proceedings.**



Part of the McClatchy Media Network

News  Sports  Politics  Food  Business  Opinion  Games  Obituaries  Finance  Classifieds  Raleigh's Best

CRIME

# NC woman accused of shooting attorneys to face mental evaluation. How that works.

By **Faith Wardwell**

UPDATED MAY 29, 2026 12:02 PM



**EXHIBIT F – THE NC BEAT COVERAGE**

**Figure 6. Representative media reporting and public discussion concerning Ms. White's allegations.**



Contempt Motion From Gwendolyn White Says Rolesville PD Ignored Judge Orders On Bodycam Video                    5/31/26, 7:19 AM

**THE NC BEAT**
RAW, UNCUT & UNFILTERED.

Got a Story?

Type to start searching...    SEARCH

HOME · NEWS · RALEIGH · CHURCH DRAMA · WINSTON-SALEM · GREENSBORO · CELEBRITY NEWS · VIDEOS

*BODYCAM FOOTAGE*

**EXCLUSIVE: Contempt Motion Shows Gwendolyn White's Years-Long Battle with Rolesville Police — Now Central to Raleigh Courthouse Shooting Case**

Type to start s    Search

**Trending**

**Shelby NC Cop Fired After Viral Video Shows Him Punching Black Woman In The Face 10 Times During Arrest**

**Shelby NC Police Officer Karson Hyder Seen Punching Black Woman Repeatedly In Viral Video**

**Gwendolyn White's Attorney The Day Of The Shooting Speaks Out As White Accuses Rolesville PD Of Deleted Bodycam Cover-Up**

https://thencbeat.com/exclusive-gwendolyn-whites-years-long-battle/                    Page 1 of 20

Publicly filed court records further reflect that allegations regarding governmental targeting, threats, and requests for Pentagon-related schematics later became referenced in competency-related proceedings arising from ongoing North Carolina litigation.

**EXHIBIT G – COMPETENCY MOTION OR COURT FILING EXCERPT**

**Figure 7. Public court filing referencing allegations later discussed in competency proceedings.**

8

DATE: 05/26/2026
TIME: 10:05 AM
WAKE COUNTY
CLERK OF SUPERIOR COURT
BY: NS

**STATE OF NORTH CAROLINA**

WAKE County

File No. 26cr313955-910

In The General Court Of Justice
[X] District   [ ] Superior Court Division

Name Of Defendant
GWENDOLYN EVETTE WHITE

**MOTION AND ORDER
COMMITTING DEFENDANT
TO CENTRAL REGIONAL HOSPITAL -
BUTNER CAMPUS FOR EXAMINATION
ON CAPACITY TO PROCEED**
(For Offenses Committed On Or After Dec. 1, 2013)

G.S. 15A-1002

Offense (copy of charging document(s) attached)
2 X ATT. 1ST DEG. MURDER

NOTE: In felony cases, a local examination must be ordered before an examination at Central Regional Hospital - Butner Campus if the court finds that a local impartial medical expert or forensic evaluator certified under the rules of the Commission for Mental Health, Developmental Disabilities, and Substance Abuse Services is available and appropriate. To order a local examination for an offense committed on or before November 30, 2013, use form AOC-CR-207A. To order a local examination for an offense committed on or after December 1, 2013, use AOC-CR-207B.

NOTE: The address for Central Regional Hospital - Butner Campus is Forensic Services Unit, Central Regional Hospital - Butner Campus, 300 Veazey Road, Butner, NC 27509. The telephone number is 919-764-5009 and the fax number is 919-764-5012.

**MOTION QUESTIONING DEFENDANT'S CAPACITY TO PROCEED**

The undersigned moves that the above named defendant be examined to determine whether by reason of mental illness or defect the defendant is unable to understand the nature and object of the proceedings against the defendant, to comprehend his/her own situation in reference to the proceedings, or to assist in his/her defense in a rational or reasonable manner. The specific conduct that leads the moving party to question the defendant's capacity to proceed is as follows:
THE ACCUSED HAS A LONG STANDING DISPUTE WITH THE ROLESVILLE POLICE DEPARTMENT. DEFENDANT HAS STATED THAT SHE WAS DEMANDED TO PROVIDE SCHEMATICS OF THE PENTAGON TO THE POLICE DEPARTMENT. DUE TO HER REFUSAL, THE ACCUSED STATES THAT SHE HAS SUFFERED FROM CONSTANT THREATS ON HER LIFE FROM LAW ENFORCEMENT AND HER NEIGHBORS. THE ACCUSED STATES THAT BOTH HERSELF AND HER MOTHER WERE POISONED WHICH LED TO THE DEATH OF HER MOTHHER. UPON INFORMATION AND BELIEF, THE ACCUSED WAS INVOLED IN A SERIOUS CAR ACCIDENT A MONTH PRIOR TO THE INCIDENT. THE ACCUSED STATES THAT SHE HAS NO MEMORY OF ANY ALLEGED SHOOTING.

Date
05/25/2026

Signature
Deonte L Thomas

[ ] Prosecutor
[X] Defendant's Attorney
[ ] Judge

**CERTIFICATE OF SERVICE BY MOVING PARTY**

I certify that a copy of this Motion was served by:
[X] delivering a copy personally to the
[ ] defendant's attorney.   [X] prosecutor.   [ ] defendant.

[ ] depositing a copy, enclosed in a postpaid properly-addressed envelope, in a post office or official depository under the exclusive care and custody of the U.S. Postal Service directed to the
[ ] defendant's attorney.   [ ] prosecutor.   [ ] defendant.

[ ] leaving a copy at the office of the
[ ] defendant's attorney with an associate or employee.   [ ] prosecutor with an associate or employee.

Name And Title Of Person With Whom Copy Left

Service accepted by:   [ ] defendant's attorney.   [X] prosecutor.   [ ] defendant.

Signature Of Person Accepting Service

Date Served
5-26-26

Signature Of Person Serving

Title
APD

Original - File   Copy - Hospital   Copy - Moving Party   Copy - Opposing Party   Copy - Sheriff
(Over)

AOC-CR-208B, Rev. 1/23
© 2023 Administrative Office of the Courts

**ARGUMENT**

The significance of Ms. White's circumstances is not whether her allegations have been adjudicated or proven. The significance is that her publicly documented efforts to obtain assistance occurred outside the January 6 context and involved allegations of governmental targeting, retaliation, selective enforcement, abuse of authority, and the failure of governmental institutions to meaningfully address concerns she believed warranted federal review.

9

Ms. White's circumstances demonstrate that potential future claimants may arise from entirely different factual backgrounds than those discussed in the Complaint. Her allegations stem from events she contends began during the Biden Administration, involve claimed governmental misconduct unrelated to January 6, and concern matters that she has repeatedly attempted to bring before governmental and civil rights authorities.

The continuing public coverage of Ms. White's allegations by WRAL-TV, The News & Observer, The NC Beat, independent media outlets, and citizen journalists further demonstrates that her circumstances have generated substantial public interest and underscore the existence of potential future claimants whose allegations of governmental targeting arise entirely outside the January 6 context.

The Attorney General's Order expressly references the projected valuation of "future claimants' claims." The existence of publicly documented individuals such as Ms. White demonstrates why the Court should exercise caution before adopting any interpretation that would effectively narrow the universe of potential claimants before an administrative framework, eligibility criteria, evidentiary standards, and review procedures have been fully developed.

Accordingly, the undersigned respectfully submits that the publicly documented circumstances of Gwendolyn E. White provide a contemporary example of a potential category of future claimant whose allegations arise outside the January 6 context and whose interests may be affected by the relief requested in this action.

## CONCLUSION

For the foregoing reasons, Proposed Amicus respectfully requests that the Court consider the interests of prospective future claimants outside the January 6 context when evaluating the scope of the requested relief.

Respectfully submitted,

Shaunesi DeBerry
PRO SE PROPOSED AMICUS CURIAE

10

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2026, a true and correct copy of the foregoing Motion for Leave to File Supplemental Amicus Submission and Supplemental Amicus Submission was filed with the Clerk of Court using the Court's CM/ECF system, which will provide notice to all registered counsel of record.

Shaunesi DeBerry