# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

HARRY DUNN,
Plaintiff,                                          )
                                                    )
                                                    )
DANIEL HODGES,                                      )
Plaintiff.                                          )
                                                    )
                                                    )
v.                                                  )          Case 1:26-cv-01719
                                                    )
                                                    )
DONALD TRUMP, in his                                )
official capacity as President                      )
of the United States, Defendant,                    )
                                                    )
                                                    )
TODD BLANCHE, in his                                )
official capacity as Acting                         )
Attorney General of the                             )
United States, Defendant,                           )
                                                    )
                                                    )
SCOTT BESSENT, in his                               )
official capacity as Secretary                      )
of the Department of the Treasury                   )
of the United States, Defendant.                    )
                                                    )

RECEIVED
MAILROOM

JUN - 9 2026

Angela D. Caesar, Clerk
U.S. District & Bankruptcy Courts
for the District of Columbia

## MOTION TO INTERVENE

Intervenor respectfullu moves to join under Federal Rule of Civil Procedure 19(a) Rule (a)(1)(B)(i) because Intervenor laims an interest relating to the subject of the instant action and is so situated that disposing of this action in the Intervenor's absence will as a practical matter impede the Intervenor's ability to protect his interest. Indeed, if

13

the Plaintiffs' Prayer for Relief E is granted and the Plaintiffs enjoin Defendants from making payments from the Weaponization Fund to "any claimant," that injunction would prevent the Intervenor from protecting his interests and the relief he sought in his May 26, 2025 Weaponization Fund claim - monies and an apology from USDA.

Upon joinder, the Intervenor will move that the Court deny Plaintiff's Relief Part E and that the Court dismiss without prejudice the rest of the Plaintiffs' Complaint as not yet ripe for litigation.

**Respectfully Submitted,**

_/S/   Glenn Stephens   5/28/2026_
Glenn Stephens III Ph.D., Esq.
Stephens Arbitration Mediation & Settlement (SAMS)
Post Office Box 120  Gilbertsville PA 19525
StephensArbMedStlmt@gmail.com

14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HARRY DUNN,  )
Plaintiff,  )
   )
DANIEL HODGES,  )
Plaintiff.  )
   )
v.   )    Case  1:26-cv-01719
   )
DONALD  TRUMP, in his  )
official capacity as President  )
of the United States, Defendant,  )
   )
TODD BLANCHE, in his  )
official capacity as Acting  )
Attorney General of the  )
United States, Defendant,  )
   )
SCOTT BESSENT, in his  )
official capacity as Secretary  )
of the Department of the Treasury  )
of the United States, Defendant.  )
   )

RECEIVED
MAILROOM

JUN - 9 2026

Angela D. Caesar, Clerk
U.S. District & Bankruptcy Courts
for the District of Columbia

## BRIEF FOR INTERVENOR
## GLENN STEPHENS III Ph.D. J.D.

1

# CORPORATE DISCLOSURE STATEMENT

In that Federal Rule of Civil Procedure 7.1 requires a Intervenor to file a disclosure statement, the Intervenor certifies that Intervenor is not a publicly held entity, does not have any parent corporation, and is not a trade association. The Intervenor certifies that no publicly held entity has a direct financial interest in the outcome of the litigation, that this case does not arise out of a bankruptcy proceeding, and that this is not a criminal case in which there was an organizational victim.

## BRIEF OF INTERVENOR

### I. Issues

Whether to grant Intervenor's Motion to Join under Federal Rule of Civil Procedure 19(a) Rule (a)(1)(B)(i) because Intervenor "claims an interest relating to the subject of the instant action and is so situated that disposing of this action in the Intervenor's absence will as a practical matter impede the Intervenor's ability to protect his interest.

Whether a Grant by this Court of Plaintiffs' Prayer for Relief E, enjoining Defendants from making payments from the Weaponization Fund to "any claimant" (e.g., Intervenor), would prevent the Intervenor from protecting his interests and the relief he sought in his May 26, 2025 Weaponization Fund claim - monies and an apology from USDA.

Whether the long litany of "imagined horribles" portended by the Plaintiffs' Counsel, although potentially real at some future point in time are not yet ripe warranting dismissal of the Plaintiffs' Complaint.

### II.  Prologue – My Apologies

It pains the Intervenor that he is at legal cross-purposes with the Plaintiffs.  The Intervenor comes from a law enforcement family; his

uncle was a lawyer and policeman; his nephew is currently a policeman; his sister is a retired award – winning probation officer. The violence visited on these officers during the attempted putsch on January 6, 2021, the threats and dangers these officers continue to endure, and the psychological, physical, financial and reputation harms to these officers and their families and friend must, quite simply, be almost unbearable.

The Intervenor *sincerely* apologizes if his intervention in the instant case derails, even temporarily, their efforts to gain peace and justice.

## III. Preface: "Jurisprudence" in an Era of Tribalism

Our era of partisan tribalism, characterized by situational "ethics" and transactional myopia, predictably generates result-driven sophisty in legal discourse and jurisprudence.  Operating without any semblance of coherent planks and platforms, party apparatchiki[1] and their legal accoutrements shamelessly advance their tribes' analogues of $2 + 2 = 5$.[2]

In our era, traditional and legal-rational (bureaucratic) authority

---

[1]    Intervenor, who holds a Ph.D. in Political Science from UCLA,  began his graduate studies at Duke University as a Soviet specialist studying with the esteemed Soviet Jerry Hough. Intervenor uses plural of the Russian term "apparathik" because the Russia carries the derogatory connotation   of acritical - even mindless - loyalty to a political party.

[2]    See George Orwell. *Animal Farm,* Harcourt, Inc. (1946).

given way to charismatic authority. Over a century ago, Max Weber, one of the giants of Sociologu wrote of charistmatic authority:

> In a revolutionary and sovereign manner, charismatic domination transforms all values and breaks all traditional and rational norms[3] Since it is 'extraordinary,' charismatic authority is sharply opposed to rational and particularly bureaucratic authority, and to traditional authority . . . It recognizes no appropriation of positions of power by . . . [bureaucratic] or socially privileged groups.[4]

Sociologically speaking, at least from a Neo-Weberian perspective, candidate and President Donald J. Trump has revolutionized American politics because his charismatically driven politics and pledge to "drain the swamp" taps into widespread disenchantment with the traditional Beltway politics of both parties and the bureaucratic authority of the federal government. Like Weber, Trump and his base see bureaucracy as an iron cage of domination. Trump charismatically promises to open the doors of the iron cage created by traditional bureaucratic politics.

---

[3]    Max Weber, Economy and Society: An Outline of Interpretive Sociology, University of California Press, Berkeley, CA (1978)(edited by Guenther Roth and Claus Wittich) at 1155.

[4]    Id at 244.

Whatever the impact of Trumps' charisma-driven revolution on our politics, its impact of our legal discourse has been catastrophic. As in Pericles' Athens, our democracy has been ripped to shreds by paid sophists deployed to make unjust arguments sound just. [5] And because Trump is the omega point around which legal discourse revolve, the tribes' stances have been reduced to "I am having what he is having!" and "I am not having what he is having" (or as Pennsylvania Senator John Fetterman puts it - whether it "F__ s Trump" or not).

Predictably, when the Acting Attorney General (A.G.) announced the Weaponization Fund on May 18, 2026, partisan pundits, legacy- and social media, party apparatchiki, and lawyers, quickly manned the ramparts based on knee-jerk reactions regarding whether the Fund would "F__ Trump and his allied" or "Not F__ Trump and his allies."

The hastily drafted Complaint of Plaintiffs' Counsel is exemplary.

## IV.    Plaintiffs' Complaint and Counsel Ignore Contract Law 101

Traditionally, in our legal discourse, legal analysis consisted of the syllogistic application of law to facts preceding a short policy section. But

---

[5]    https://classics.mit.edu/Aristophanes/clouds.html (visited May 27, 2026)

in our tribal era, policy and politics comes first. The tribal sophist then works backwards from the desired or criticized policy outcome through a legal argument that would advance the policy or politics in question (which is invariably a matter of whether it "F___s Trump" or not.)

.    The Complaint drafted by the Plaintiffs' Counsel, who otherwise seems to be erudite, exemplifies the infirmities of jurisprudence that put the political cart in front of the legal horse. The Complaint begins:

> In the most brazen act of presidential corruption this century, President . . . Trump has created a $1.776 billion taxpayer funded slush fund to finance the insurrectionists and paramilitary groups that commit violence in his name.

The Intervenor submits Plaintiffs Counsel ignores whether the instrument created by the Settlement can bring about *only* that end.

### a. Florida Adheres to a Four-Corners of the Contract Rule

Plaintiffs' Counsel, in his tribal haste, runs past the fact that the lawyers who negotiated the Settlement Agreement, Daniel Esposito, and Alejandro Brito aren't Learned Hand or Oliver Wendell Holmes. Even a cursory glance at the instrument they drafted shows that this isn't a case study in detailed drafting. For example, the Agreement lacks any choice-of-law provision governing its construction.

But assuming, for the sake of argument, that Florida common law governs the construction of the Agreement, then the Agreement must be construed under a Four-Corners of the contract approach.

### i. Democrats are Only Mentioned in the Recitals

When Brito and Esposito et al. drafted the Agreement, they placed the only mentions of Democrats, a Democratic President (Biden) or a Democratic Administration (Biden's) in the Recitals. see Section II, Paragraph C. It is horn-book contract law that recitals are only relevant if a later provision is ambiguous. But Section V (Limitations on Claims) is unambiguous — claims are not limited in any partisan way.

In essence, the placement of any and all mentions of political affiliations in the recitals by these drafters and the lack of any ambiguity in the Agreement's Limitations provision renders any mention of the Democrats in the Recitals exegetical nullities. Party does not matter. And while the testimony of the Acting A.G. before Congress is parole evidence, his conclusion - "anybody in this country is eligible to apply" is correct.

And if "anyone can apply," whether the President and allies like it or not, then anyone victimized by Trump Administration weaponized warfare, for example James Comey, can apply for Weaponization Fund

8

monies and other relief (like an apology). Whether President Trump intended this or not is irrelevant - the shoddy lawyering of second- and third-tier lawyers Brito, Esposito, and Branche left this door wide open.

## V.  Plaintiffs' Relief Part E Would Estop Intervenors' Fund Claim

The Intervenor filed a Weaponization Fund Claim on May 26, 2026 to remedy lawfare by the Obama and Biden USDA's Office of the Assistant Secretary of Civil Rights (OASCR) in retaliation for his statutorily-protected opposition and against systematic reverse (anti-white) racism.

If granted, the relief that Plaintiffs' Counsel seeks in Part E would stop Intervenors' Weaponization Fund Claim (Claim) dead in its tracks. Killing the Intervenor's Claim which remedies very real past harms is particularly inappropriate because most, if not all of the wrongs that the Plaintiffs' Complaint would enjoin consist of speculative harms and wrongs that have not yet occurred, and not yet ripe for litigation.

Beyond that, if the horribles that Plaintiff's Counsel imagines occur at some future point, the Plaintiffs' have several remedies. First, the Plaintiffs can submit a Weaponization Fund Claim (and cheekily remind the Acting Attorney General of his proclamation  under  oath before Congress that "anybody in this country is eligible to apply").

9

Second, if, or when, the Weaponization Fund is used to a) "finance . . . insurrectionists and paramilitary groups, Complaint Para. 1; b. "directly finance the violent operations of rioters, paramilitaries, and their supporters who threatened Plaintiffs' lives that day," Complaint Para. 3; c) cause "the United States . . . [to] assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States" in violation of Section 4, Clause 2 of the 14th Amendment, "contrary to . . .a right, power, privilege, or immunity" granted therein violate 5 U.S.C. § 706(2)(B), Complaint Paras. 164 – 165, then the applicable section of the Weaponization Fund Settlement, as applied, could be challenged as void as a contract provision in violation of public policy – the Constitution, Sec. 706, and state and federal criminal law.

## VI. Conclusion

The Court should grant joinder, deny the Plaintiff's Relief E, and dismiss without prejudice the rest of their Complaint as not yet ripe.

10

Respectfully Submitted,

  /S/   *Glenn Stephens*  5/28/2026
Glenn Stephens III Ph.D., Esq.
Stephens Arbitration, Mediation & Settlement (SAMS)
Post Office Box 120  Gilbertsville PA 19525
StephensArbMedStlmt@gmail.com

## CERTIFICATE OF SERVICE

On May 28, 2026, the above was mailed to the Court and Plaintiffs' Counsel.

/S/    *Glenn Stephens*    5/28/2026
Glenn Stephens III Ph.D., Esq.
Stephens Arbitration, Mediation & Settlement (SAMS)
Post Office Box 120  Gilbertsville PA 19525
StephensArbMedStlmt@gmail.com